## A11A0052. WARE v. THE STATE.
(710 SE2d 627)

MIKELL, Judge.

After a stipulated bench trial, David Maurice Ware was convicted of possession with intent to distribute marijuana and sentenced to ten years, with one year to be served in confinement and the remainder on probation. On appeal, Ware challenges the denial of his motion to suppress, and we affirm.

> In reviewing a trial court's ruling denying a motion to suppress . . . , the following three principles apply: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, *the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous*. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was testimonial evidence in this case, we do not apply a de novo standard of review.[1]

So viewed, the record shows that at the hearing on the motion to suppress, which was incorporated into the record during the bench trial, Deputy Patrick Gilbert of the Newton County Sheriff's Office testified that he and another officer were dispatched to a neighborhood dispute call and upon arrival, they encountered Ware walking away from the scene. The officers twice asked Ware to come back and talk to them and Ware complied. Ware walked toward the officers with his hands in his pockets, and when the officers asked him to remove them, he said that he did not wish to do so. Gilbert further testified that he then asked Ware if he could search his person to ensure that he had no weapons on him, and Ware gave his consent; that he felt a soft, spongy lump in Ware's pocket; and that the lump

---

[1] (Punctuation and footnotes omitted; emphasis supplied.) *Butler v. State*, 303 Ga. App. 564-565 (694 SE2d 168) (2010).

turned out to be a small, black bag containing six individually wrapped bags of what appeared to be marijuana.

During cross-examination, Gilbert was asked about his police report, in which he wrote that Ware gave him permission to check his pockets during the pat-down, and Gilbert explained that it all occurred at the same time and that he received consent to search Ware's pocket. On re-direct, Gilbert confirmed that he conducted the pat-down for officer safety but did not search Ware's pockets until he obtained consent to do so. There was no further testimony offered at the hearing. The trial court denied the motion to suppress, finding that the pat-down for the purpose of the officer's safety was authorized.

On appeal, Ware argues that his detention and subsequent search were unlawful. We disagree.

> There are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief "stops" or "seizures" that must be accompanied by a reasonable suspicion; and "arrests," which can be supported only by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. In accordance therewith, during such an encounter, an officer may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.[2]

In the instant case, the contact between the officers and Ware was a first-tier consensual encounter.

> [M]erely approaching an individual and requesting that he give his consent for a search does not constitute a seizure and need not be supported by an articulable suspicion. Even when officers have no basis for suspecting a particular

---

[2] (Citation and punctuation omitted.) *In the Interest of D. H.*, 285 Ga. 51, 53 (2) (673 SE2d 191) (2009).

individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search, as long as the police do not convey a message that compliance with their requests is required.[3]

There is no evidence that the encounter involved coercion or detention.

Once Ware indicated that he did not want to remove his hands from his pockets, Gilbert asked Ware for permission to do a pat-down, and Ware gave him consent. Unlike a full search, a pat-down is conducted solely for the purpose of ensuring the officer's safety and that of others nearby, not to obtain evidence for use at a trial.[4] As such, it is considered "a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer."[5] Accordingly, the officer may pat down the suspect's outer clothing,[6] but he may "intrude beneath the surface [of the clothing] in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the 'plain feel' doctrine."[7] Therefore, upon feeling the soft, spongy item in Ware's pocket, the officer was not automatically authorized to search Ware's pocket.[8] But Gilbert testified that he asked for consent to search Ware's pocket, and that Ware gave his consent.

> A valid consent eliminates the need for either probable cause or a search warrant. Moreover, once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn. The burden of proving the validity of a consensual search is upon the [s]tate. To meet its burden, the [s]tate must show that the consent was voluntarily

---

[3] (Punctuation omitted.) *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992), citing *Florida v. Bostick*, 501 U. S. 429, 434-435 (II) (111 SC 2382, 115 LE2d 389) (1991). Accord *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999).

[4] *Johnson v. State*, 297 Ga. App. 847, 848 (678 SE2d 539) (2009).

[5] (Citation omitted.) Id.

[6] Id.

[7] (Citation omitted.) *Sudduth v. State*, 288 Ga. App. 541, 542 (2) (654 SE2d 446) (2007). Accord *Johnson*, supra.

[8] See *Brown v. State*, 293 Ga. App. 564, 566 (1) (667 SE2d 410) (2008) (officer lacked authority to intrude into defendant's pocket upon feeling the corner of a hard object absent evidence that the officer thought the object was or contained a weapon). Compare *Dunn v. State*, 289 Ga. App. 585, 586-587 (1) (b) (657 SE2d 649) (2008) (trooper authorized to seize bag, where he saw plastic bag in defendant's pocket and, on pat-down search, felt powdery substance in bag that he believed was cocaine). In the instant case, there was no testimony from the officer that he thought the object he felt was contraband.

given and was not merely acquiescence to a claim of lawful authority.[9]

The evidence in the record was that Ware consented to the search, and Ware offered no evidence to the contrary. Accordingly, the officer was authorized to seize the marijuana from Ware's pocket.[10]

Ware argues that *Walker v. State*[11] supports his contention that the detention was unlawful. But *Walker* is inapposite here. *Walker* involved a second-tier investigative detention, where the officer had no particularized and objective basis for suspecting that the defendant was or was about to be involved in criminal activity,[12] with the result that defendant's consent was not valid because it was the product of an illegal detention.[13] Additionally, even had the search followed a valid consent, the officer exceeded the scope of the search of the defendant's pockets when he pulled the defendant's waistband forward to look down inside the defendant's crotch area.[14]

Ware briefly refers to inconsistencies in Gilbert's testimony as to whether he actually asked for consent to do the pat-down and to search Ware's pockets, but the "[c]redibility of witnesses, resolution of any conflict or inconsistency, and weight to be accorded testimony are solely the province of the judge on a motion to suppress,"[15] and the trial court obviously believed the officer's testimony. Accordingly, the trial court did not err when it denied Ware's motion to suppress.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

## DECIDED APRIL 27, 2011.

*Teresa L. Smith*, for appellant.

---

[9] (Citations and punctuation omitted.) *Brint v. State*, 306 Ga. App. 10, 12-13 (2) (701 SE2d 507) (2010). Compare *Johnson*, supra at 849 (denial of motion to suppress reversed where state could not provide voluntary consent as officer did not testify that he asked for consent to search the defendant's pocket).

[10] See *Hicks v. State*, 293 Ga. App. 745, 746-747 (667 SE2d 715) (2008) (officer authorized to seize contraband from defendant's pocket after receiving consent to search the pocket); *State v. Davis*, 283 Ga. App. 200, 203 (2) (641 SE2d 205) (2007) (officer authorized to seize cocaine from defendant's pocket after defendant consented to search of that pocket).

[11] 299 Ga. App. 788 (683 SE2d 867) (2009).

[12] Id. at 790 (1).

[13] Id. at 791 (2).

[14] Id. at 791-792 (2).

[15] (Citation and punctuation omitted.) *Reese v. State*, 252 Ga. App. 650, 651 (1) (556 SE2d 150) (2001). Accord *Welch v. State*, 263 Ga. App. 70, 72 (2) (587 SE2d 220) (2003).

*W. Kendall Wynne, Jr., District Attorney, Nathan A. Kratzert, Assistant District Attorney*, for appellee.