### A11A0911. MORGAN v. THE STATE.
(716 SE2d 821)

DILLARD, Judge.

Following a jury trial, Samuel Lee Morgan was convicted of trafficking in cocaine. Morgan's sole enumeration of error on appeal is that the trial court erred in denying his motion to suppress the cocaine that was discovered during a search of the rental vehicle he was driving. For the reasons set forth infra, we affirm.

The record shows that Morgan and a passenger, his then-girlfriend Jessica Thompson, were traveling northbound on I-85 when a Gwinnett County police officer observed the Chrysler PT Cruiser they were driving make an abrupt lane change without signaling, nearly cutting off another car. The officer then entered the roadway, caught up to Morgan's vehicle, ran the tag number, and discovered that the tag was registered in North Carolina to a Dodge Caravan that belonged to a rental car company. At that point, the officer initiated a traffic stop.

After approaching the vehicle on the passenger side and detecting what he believed to be a faint odor of cocaine, the officer asked Morgan for his driver's license. Morgan handed the officer a North Carolina identification card, and a subsequent check showed that Morgan's driver's license was suspended. Morgan also provided the

---

officer with a copy of the rental agreement, which listed a third-party renter, showed neither Morgan nor Thompson as a driver, and advised that the vehicle was not to leave North Carolina.[1] Additionally, the agreement provided that the car was scheduled to be returned to the rental company the day before.

When the officer learned that Morgan was driving with a suspended license, he decided to continue investigating the situation rather than make an immediate arrest. And when Morgan was informed that his license was suspended, he told the officer that Thompson could drive the vehicle instead. But after Thompson gave the officer her Virginia driver's license, a check revealed that she too had a suspended license. The officer testified that Thompson became very nervous when she was informed that her license was suspended and that she appeared uncomfortable with his questions.

The officer proceeded to question both Morgan and Thompson separately as to where they were traveling to and from, and the two gave conflicting stories and became nervous when the officer informed each of their competing narratives.[2] The officer also testified that he did not observe luggage, food wrappers, or normal travel attire, but he did see an air freshener hanging inside the rental car, all of which further aroused his suspicion.[3] Thus, based on Morgan and Thompson's nervousness and inconsistent stories, the officer asked Morgan for consent to search the vehicle after inquiring whether there were guns, illegal drugs, or large amounts of currency inside. Morgan denied that the vehicle contained any of these items and, according to the officer, consented to a search.

After back-up arrived, the officer began a search of the vehicle on the passenger side and again detected an odor of cocaine, which the officer was familiar with through extensive drug training and experience. When he opened the glove box, the officer noticed a brown paper bag sticking out from behind the compartment. A release of the compartment revealed a paper bag surrounding a plastic bag that contained a white powdery substance, which later tested positive as 499.08 grams of cocaine with a 68-percent purity. Both Morgan and Thompson were then placed under arrest and read their *Miranda* rights. After Morgan was placed in a patrol car (and

---

[1] The officer testified that, in his experience, a third-party rental agreement raises suspicion of trafficking in narcotics.

[2] Morgan told the officer that the two were on vacation and were returning from a visit with family in DeKalb County. Thompson told the officer that they had stayed at a motel in DeKalb and were heading to the Carolinas to visit additional family, but Morgan stated that the two were heading home. Additionally, Thompson did not know of an address or city to which the two were traveling.

[3] The officer testified that, in his experience, an air freshener is often used to mask the scent of narcotics.

after acknowledging that he understood his rights), he made a comment to the officer that he had not violated any traffic laws by changing lanes and that somebody must have tipped off the officer.[4]

Thereafter, both Morgan and Thompson were indicted on charges of trafficking in cocaine.[5] Morgan moved to suppress the cocaine found in the vehicle, arguing that he did not give valid consent to search and that there was no probable cause to search the vehicle. Morgan testified that the officer never requested consent to search and instead informed him that he would be searching the vehicle for officer-safety purposes. But the trial court denied the motion, finding that Morgan and Thompson's detention was warranted by the facts surrounding the vehicle's tag and rental agreement, as well as their inconsistent stories, all of which aroused the officer's suspicion and led to further investigation. Additionally, the trial court noted that Morgan's statements after arrest were inconsistent with his claim that he had not given consent to search. And following a joint trial, Thompson was acquitted but Morgan was found guilty of the offense. This appeal by Morgan follows.

At the outset, we note that this Court reviews a trial court's ruling on a motion to suppress using the any evidence standard, "which means that we sustain all of the trial court's findings of fact that are supported by any evidence."[6] And therefore, we "construe all evidence presented in favor of the trial court's findings and judgment, accepting the trial court's decision unless it is clearly erroneous."[7] With these guiding principles in mind, we now turn to Morgan's argument.

Morgan argues on appeal that his consent to search the rental vehicle was not freely given under the totality of the circumstances and that the trial court's ruling on credibility was clearly erroneous. We disagree.

It is, of course, the State's burden to prove at a suppression hearing that "the consent was freely and voluntarily given under the totality of the circumstances."[8] And "[t]he crucial test is whether . . .

---

[4] At a pre-trial *Jackson-Denno* hearing, the trial court held that this statement was admissible at trial.

[5] *See* OCGA § 16-13-31 (a).

[6] *Jupiter v. State*, 308 Ga. App. 386, 387 (1) (707 SE2d 592) (2011) (footnote and punctuation omitted).

[7] *Id.* (footnote and punctuation omitted); *see also Lowe v. State*, 214 Ga. App. 92, 93 (446 SE2d 532) (1994) (noting that appellate review is guided by three principles: (1) the trial judge sits as the trier of facts in a motion to suppress hearing; (2) the trial judge's decision as to questions of fact and credibility must be accepted unless clearly erroneous; and (3) the appellate court must construe the evidence most favorably to upholding the findings and judgment made by the trial judge).

[8] *Davis v. State*, 306 Ga. App. 185, 188 (2) (702 SE2d 14) (2010) (citation and punctuation omitted).

the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[9] In this regard, Morgan appears to make two arguments. First, that "[t]he totality of the officer's conduct was such that a reasonable person would not feel free to ignore the police presence or deny the officer's request to search" because (1) Morgan knew he had given the officer an identification card, not a driver's license; (2) Morgan knew he was not listed on the rental agreement and that the vehicle did not belong to him or Thompson; and (3) Morgan knew he was dealing with a uniformed police officer with arrest powers. Second, Morgan contends that the trial court's credibility determination was clearly erroneous.

We find both of these arguments unavailing. Indeed, Morgan's testimony before the trial court was that he did *not* consent to a search because the officer did not even request consent to search. Specifically, Morgan testified that

> [i]t was actually more of a statement as if he was going to search the car . . . . Something along the lines [of] due to the fact of the car . . . supposedly being out of the State of North Carolina and the tags not being registered to the vehicle, he was going to search for his safety reasons . . . . If I can recall, when he stated that . . . he was going to search the vehicle, I stated that the vehicle didn't belong to me, so I couldn't give consent to search[.]

And when asked if he at any time gave the officer consent to search, Morgan explicitly replied, "No, I didn't." On the other hand, the officer testified that he requested consent to search and that Morgan readily provided same.

The discrepancies between Morgan's testimony and that of the officer created an issue of credibility for the trial court as to whether the officer did in fact request consent to search and whether Morgan actually consented, and we must accept the trial court's determination in this regard unless it is clearly erroneous.[10] And "[i]nsofar as the trial court's ruling reflects a resolution of this question of credibility in favor of the State, we find no error as such is supported

---

[9] *Id.* (citation and punctuation omitted).

[10] *See Bobbitt v. State*, 195 Ga. App. 566, 567 (394 SE2d 385) (1990) ("While defendant testified that he did not consent to the search of the automobile, the resolution of the question of credibility thus presented was for the trial court and must be accepted unless clearly erroneous." (citations omitted)); *see also Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact.").

by the evidence."[11]

Accordingly, we affirm the trial court's denial of the motion to suppress.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 21, 2011.

*Clark & Towne, Jessica R. Towne*, for appellant.
*Daniel J. Porter, District Attorney, Jennifer M. Taylor, Assistant District Attorney*, for appellee.

---

[11] *Bobbitt*, 195 Ga. App. at 567; *see also Williams v. State*, 196 Ga. App. 682, 682-83 (1) (396 SE2d 598) (1990) (upholding denial of motion to suppress on issue of credibility when, contrary to officers' testimony, appellant contended that he did not give consent to search and it was undisputed that officers did not obtain written consent).