**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**May 23, 2012**

# In the Court of Appeals of Georgia

A12A0748. MWANGI v. THE STATE.

MIKELL, Presiding Judge.

Following a stipulated bench trial, Bernard Ndungu Mwangi appeals from his convictions for theft by taking, burglary, entering an automobile with intent to commit theft, and forgery. He contends that the trial court erred in denying his motions to suppress evidence seized and statements made to police both before and after his incarceration. For the reasons that follow, we affirm.

In reviewing a trial court's ruling denying a motion to suppress, the following three principles apply: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, *the trial court's decision with regard to questions of fact and*

*credibility must be accepted unless clearly erroneous*. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was testimonial evidence in this case, we do not apply a de novo standard of review.[1]

So viewed, the record shows that at the hearing on the motions to suppress, Officer M. J. Masselter of the Cobb County Police Department testified that at about 2 a.m. on January 25, 2010, he and another officer responded after a caller to 911 reported that the motion-sensor lights on the front and back of her house came on after a man she did not know parked his truck in her driveway, blocking it, and walked away. The truck in question belonged to a business in another area. As the officers approached the house where the 911 call originated, Masselter saw Mwangi, wearing dark clothing and riding a toy scooter down a hill toward the police car. The police and Mwangi each stopped at approximately the same time, about 100 to 150 feet apart. Masselter identified himself and his companion as police officers. Mwangi allowed himself to be patted down. No weapons were found. Mwangi consented to

---

[1] (Punctuation and footnote omitted; emphasis in original.) *Ware v. State*, 309 Ga. App. 426 (710 SE2d 627) (2011).

2

a search of his pockets, in which Masselter found a pair of gloves and a key. Once the officers determined that the key fit the truck, they detained Mwangi.

At the scene, Mwangi told Cobb County Police Officer Dennis Ryan that he had been walking in people's yards and looking into cars; that the truck did not belong to him; but that he had parked it in the driveway. Mwangi, still detained but not handcuffed, rode in Ryan's police car to show Ryan where he got the truck. After the truck's owner confirmed that the truck was missing, Ryan handcuffed Mwangi and read him his Miranda rights. Mwangi then told Ryan that he took the scooter from the house where he parked the truck, and he directed Ryan back to the house where the 911 call originated.

Cobb County Police Detective J. W. Friedlander testified that the following day, he interviewed Mwangi at the Cobb County Adult Detention Facility, where Mwangi was in custody, and advised him of his Miranda rights. Mwangi admitted to the theft of the truck, to entering numerous other vehicles in the previous months, and to forging and cashing checks he had stolen from checkbooks he found in the vehicles. He also admitted that he had some stolen items at his house. During the recorded interview, Friedlander asked for and received consent to search Mwangi's house; but because other people lived there and Mwangi was not the owner,

3

Friedlander obtained a search warrant. A search of Mwangi's room yielded items that did not belong to Mwangi, including an iPod Touch, a Wachovia bank statement, and a checkbook. The trial court denied Mwangi's motions to suppress, and entered a final disposition. Mwangi moved for a new trial, which the trial court denied. This appeal followed.

1. In his first enumeration, Mwangi asserts that the trial court erred in denying his motion to suppress evidence seized as a result of his initial detention, search, and seizure, which he argues were unlawful. We find no error.

"There are at least three types of police-citizen encounters: verbal communications which involve no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by reasonable suspicion; and 'arrests' which can only be supported by probable cause."[2]

> A first-tier encounter never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly 'stops' or 'seizes' a

[2] (Punctuation and footnote omitted.) *Stadnisky v. State*, 285 Ga. App. 33, 36 (2) (645 SE2d 545) (2007).

citizen without reasonable suspicion. Reasonable suspicion exists when an officer has a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a 'seizure' within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes he is not free to leave.[3]

(a) Mwangi contests the initial stop as unlawful. We disagree.

Masselter testified that, in the initial contact between the officers and Mwangi, Mwangi stopped at the same time the police car stopped; then the police approached him and Mwangi identified himself. Masselter testified that he initially thought that Mwangi, who was riding a child's toy scooter, was a juvenile illegally out after curfew. Officers established that Mwangi was an adult. Mwangi did not attempt to flee. Masselter testified that at the time of the initial contact, "visibility of [Mwangi] was very poor. The roadway was wet, and he was wearing dark clothing," so Masselter turned on a police spotlight because "it was difficult to see [Mwangi]."

"Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's

---

[3] (Citations and punctuation omitted.) *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999) (whole court).

5

identification, and request consent to search, as long as police do not convey a message that compliance with their requests is required."[4] The police in the instant case did not turn on their blue lights. There was no evidence that this initial encounter involved coercion or detention. The trial court did not err in finding the initial encounter lawful.

(b) Mwangi further challenges the pat-down and pocket search as unlawful. This argument fails.

Second-tier encounters occur when an officer conducts a brief investigative *Terry*[5] stop of a citizen. At this level, even in the absence of probable cause, an officer may stop a person and briefly detain him, if the officer has a particularized and objective basis for suspecting the person is involved in criminal activity.[6]

Masselter had a particularized and objective basis for suspecting that Mwangi was involved in criminal activity, because Masselter knew that within the preceding hour or so, a woman had called 911 after the motion-sensor lights on her home came on and after a strange truck had blocked her driveway. He knew that the truck

---

[4] (Footnote omitted.) *Ware*, supra at 427-428.

[5] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[6] *Pruitt v. State*, 263 Ga. App. 814, 816-817 (1) (589 SE2d 591) (2003).

belonged to a business in another area; that an unidentified male had walked away from the truck; and that in this neighborhood there recently had been a number of "entering auto" incidents involving items stolen from unlocked cars. Based on these facts, Masselter believed that the driver of the truck was probably on foot in the neighborhood. When the officers encountered Mwangi, he was alone, late at night, only about six blocks from the home where the 911 call originated. Masselter testified that Mwangi was "nervous" and "shaking" and "looked very shocked to see us." Thus, the officers had "a particularized and objective basis"[7] for suspecting that Mwangi was involved in criminal activity. Indeed, Mwangi concedes as much in his brief.

Masselter testified that he patted down Mwangi to check for weapons, for his own safety, "because of the nature of the original complaint, the time of night, [and] the fact that there was nobody else in the neighborhood that was out on foot."

"Unlike a full search, a pat-down is conducted solely for the purpose of ensuring the officer's safety and that of others nearby, not to obtain evidence for use at a trial. As such, it is considered a minimal intrusion reasonably designed to

---

[7] *Folk*, supra.

discover . . . weapons that could prove dangerous to a police officer."[8] As explained in *Terry v. Ohio*, an "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[9]

The state bears the burden of proving the lawfulness of a pat-down search for weapons,[10] and there is evidence to support the trial court's ruling that the state met its burden in this case.[11]

(c) Following the pat-down, Mwangi consented to Masselter's search of his pockets, in which the truck key and leather gloves were found. Mwangi contends that this evidence should have been suppressed because his consent was invalid given that the initial detention and pat-down were invalid. However, we have concluded above

[8] (Punctuation and footnotes omitted.) *Ware*, supra at 428.

[9] (Citations omitted.) *Terry*, supra at 27 (III).

[10] *Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010).

[11] See *Lewis v. State*, 307 Ga. App. 593, 595-596 (705 SE2d 693) (2011) (state met burden of showing lawfulness of pat-down search where defendant was in high-crime area known for robberies and was loitering near store that had previously been robbed); *Woods v. State*, 275 Ga. App. 340, 343-344 (1) (b) (620 SE2d 609) (2005) (brief investigative stop and pat-down justified by reasonable, articulable suspicion where defendant was looking into vehicles in area where there had been a spate of break-ins).

that the initial detention and pat-down were lawful. It follows that Mwangi's consent also was valid.[12]

Moreover, pretermitting whether the pat-down was supported by a reasonable belief that Mwangi was armed and dangerous, because the pat-down was brief, yielded no evidence, and was not a basis for the further investigative detention, it did not taint Mwangi's subsequent consent to the search of his pockets.[13] The search of Mwangi's pockets was valid, and the trial court did not err in denying the motions to suppress.

2. Mwangi's second enumeration contends that the trial court erred in allowing into evidence his statements and confessions to police, made both on the night of his arrest and later at the Cobb County Adult Detention Center, on the basis that the initial detention, search, and seizure were unlawful. His third enumeration alleges that the trial court erred in denying his motion to suppress evidence seized from his residence, contending that the search warrant was invalid because the evidence used to obtain it was the product of an unlawful detention, search, and seizure. However,

---

[12] *Ware*, supra at 428 (valid consent to pocket search eliminates need for either probable cause or search warrant).

[13] See *Langston v. State*, 302 Ga. App. 541, 544, n. 3 (691 SE2d 349) (2010); *St. Fleur v. State*, 296 Ga. App. 849, 853 (2) (676 SE2d 243) (2009).

Mwangi's appellate brief concedes that at the motion hearing, his trial counsel "explained to the trial judge that, if the initial stop and search at the scene were found to be valid, the subsequent statements and search of the residence would also be valid." We agree. Given our findings in Division 1, the second and third enumerations of error fail.

*Judgment affirmed. Miller and Blackwell, JJ., concur.*