**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 11, 2019**

# In the Court of Appeals of Georgia

A18A2025. THOMPSON v. THE STATE.

DILLARD, Chief Judge.

Following trial, a jury convicted Dennis Thompson on one count of possession of substances with intent to use such substances for the manufacture of a controlled substance. Thompson now appeals, arguing that the trial court erred in denying his motion to suppress unlawfully seized evidence and that the evidence was insufficient to sustain his conviction. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on April 14, 2015, an investigator with the Clinch County Sheriff's Office received information from an informant that Thompson and his friend, Clifton Tyson, were manufacturing methamphetamine at a mobile home owned by Tyson in

---

[1] *See, e.g.*, *Hartzler v. State*, 332 Ga. App. 674, 675 (774 SE2d 738) (2015).

Homerville, Georgia. Consequently, shortly after receiving the tip, three sheriff's investigators, including the investigator familiar with the informant, went to Tyson's mobile home with the intent of conducting a "knock and talk."[2] Upon arriving at the home, the lead investigator knocked on the door and could hear people inside—*i.e.*, footsteps, talking, and the shaking of a bottle with something inside it that sounded like a baby rattle. A minute or so later, Tyson opened the door, and, immediately, the lead investigator smelled a pungent chemical odor and observed a haziness inside the home, both of which, in his experience, were hallmarks of a methamphetamine lab. And fearing a possible chemical explosion, the lead investigator asked Tyson for consent to search the mobile home. Tyson consented, and he and Thompson then quickly exited the mobile home. At that point, given the strong chemical odor and haziness inside the home, the lead investigator told one of the other investigators to call the local fire department for assistance and to wait for their arrival before initiating a search of the residence.

---

[2] As the Supreme Court of the United States recognized in *Kentucky v. King,* 563 U. S. 452 (131 SCt 1849, 179 LEd2d 865) (2011), police officers do not engage in a search when they merely approach the front door of a residence (without a warrant) and seek to engage in what is termed a "knock and talk" because this conduct amounts to nothing more "than any private citizen might do." *Id.* at 469 (III) (D); *accord Florida v. Jardines*, 569 U.S. 1, 8 (II) (B) (133 SCt 1409, 185 LEd2d 495) (2013); *State v. Able*, 321 Ga. App. 632, 635 (2013).

After the firefighters arrived, the lead investigator and one of the firefighters donned protective gear and self-contained breathing apparatuses and entered the mobile home to conduct a search. Just inside the door, the investigator observed plastic soda bottles containing tubing. Then, proceeding to the kitchen just a few feet away, the investigator observed water softener salt in the sink, which looked as if someone attempted to rinse it down the drain, and, underneath the sink, he found a jar containing a yellow liquid that appeared to be an accelerant. Additionally, the investigator discovered a second jar, containing what appeared to be ammonium nitrate. Following his search of the kitchen, the lead investigator went to the home's bedroom, where he discovered an ammunition bag containing a red funnel, anhydrous ammonia packets, liquid fire, a glass bottle, pliers, and a razor knife. And based on his experience in investigating meth labs, the items recovered from Tyson's home, and the chemical odor and haze emanating from the home, the lead investigator concluded that Tyson and Thompson were manufacturing methamphetamine, as the informant alleged. Shortly thereafter, Tyson and Thompson were arrested.

The State charged Tyson and Thompson, via the same indictment, with one count of possession of substances with the intent to use such substances for the manufacture of a controlled substance. Subsequently, Tyson filed a motion to

3

suppress the evidence seized as a result of the search of his mobile home, arguing that he had not consented to the search. Thompson joined Tyson's motion, but at the conclusion of a hearing on the issue, in which Tyson, Thompson, and two of the investigators testified, the trial court denied it.

The case then proceeded to trial, during which the lead investigator testified as to his extensive background investigating methamphetamine labs, the process involved in the manufacture of methamphetamine, and his discovery of the various materials associated with such manufacture in Tyson's mobile home. The lead investigator further testified that based on the materials discovered and the pungent chemical smell and haze inside the home, in his opinion, Tyson and Thompson had been in the process of manufacturing methamphetamine. Additionally, the other investigator testified that she received information from her confidential informant that Thompson had a bottle of lye and was going to Tyson's home to "cook" meth. Tyson also testified in his own defense, again denying that he consented to the search of his home. Nevertheless, at the conclusion of the trial, the jury found Tyson and Thompson guilty on the charge as alleged in the indictment. This appeal by Thompson follows.

1. Thompson first contends the trial court erred in denying his motion to suppress the evidence that he maintains was seized as a result of an unlawful search of Tyson's mobile home. We disagree.

When the facts material to a motion to suppress are disputed, "it is generally for the trial judge to resolve those disputes and determine the material facts."[3] This principle is well established, and the Supreme Court of Georgia has "identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts."[4] Our appellate courts generally must (1) accept a trial court's findings unless they are clearly erroneous,[5] (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court,[6] and (3) limit our consideration of the disputed facts to those expressly found by the trial

---

[3] *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015); *see Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (noting that in a hearing on a motion to suppress, the trial judge sits as the trier of fact).

[4] *Hughes*, 296 Ga. at 746 (1).

[5] *See id.*

[6] *See id.*

5

court.[7] But we review *de novo* the trial court's "application of law to the undisputed facts."[8] With these guiding principles in mind, we will now consider Thompson's claim of error.

Here, Thompson maintains that the search of Tyson's mobile home was unlawful because Tyson did not consent to the search. In further support of this argument, Thompson notes that the other investigator testified that she walked out of earshot in order to call the fire department when the lead investigator sought Tyson's consent and, thus, did not actually hear Tyson agree to the search.

Setting aside the issue of whether Thompson has standing to challenge the search of Tyson's home,[9] "[a] valid consent eliminates the need for either probable

---

[7] *See id.*

[8] *State v. Conner*, 322 Ga. App. 636, 637 (745 SE2d 837) (2013) (punctuation omitted).

[9] Although the issue of Thompson's standing to contest the search of Tyson's home need not be addressed, we note that questions of this nature are becoming increasingly complex. As the Supreme Court of the United States recently explained in *Byrd v. United States*, ___ U. S. ___ (III) (A) (138 SCt 1518, 1527, 200 LEd2d 805) (2018), it is now well established that "a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it." *Id.* Nevertheless, it is also clear that "legitimate presence on the premises of the place searched, standing alone, is not enough to accord a reasonable expectation of privacy, because it creates too broad a gauge for measurement of Fourth Amendment rights." *Id.* (cleaned up). Thus, while

cause or a search warrant."[10] And once voluntary consent is legally obtained, it continues "until it either is revoked or withdrawn."[11] That said, the burden of proving the validity of a consensual search is on the State, and "to meet its burden, the [S]tate must show that the consent was voluntarily given and was not merely acquiescence to a claim of lawful authority."[12] But contrary to Thompson's claim, as discussed *supra*, the lead investigator testified during the hearing on the defendants' motions

the Supreme Court of the United States has "not set forth a single metric or exhaustive list of considerations to resolve the circumstances in which a person can be said to have a reasonable expectation of privacy, it has explained that legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* (cleaned up). As a result, some of our prior holdings may need to be reconsidered or clarified in light of recent (and ever-evolving) developments in Fourth Amendment jurisprudence. *See, e.g., Womble v. State*, 290 Ga. App. 768, 769 (1) (660 SE2d 848) (2008) ("There being no evidence that [defendant] resided at the residence or had any ownership or possessory interest in the residence, he had no expectation of privacy in the residence and thus no standing under the Fourth Amendment to challenge the search of the residence.").

[10] *Ware v. State*, 309 Ga. App. 426, 428 (710 SE2d 627) (2011) (punctuation omitted); *see Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009) (noting that a valid consent to a search "eliminates the need for either probable cause or a search warrant").

[11] *Ware*, 309 Ga. App. at 428 (punctuation omitted).

[12] *Id.* at 428-29 (punctuation omitted).

to suppress and at trial that Tyson *did* consent to the search. These discrepancies between the defendants' testimony and that of the lead investigator created an issue of credibility for the trial court as to whether the investigator did in fact request consent to search and whether Tyson actually consented, and we must accept the trial court's determination in this regard unless it is clearly erroneous.[13] And here, to the extent the trial court's ruling "reflects a resolution of this question of credibility in favor of the State, we find no error as such is supported by the evidence."[14]

2. Thompson further contends that the evidence was insufficient to sustain his conviction of possession of substances with intent to use such substances for the manufacture of methamphetamine. Again, we disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption

---

[13] *See Morgan v. State*, 311 Ga. App. 740, 743 (716 SE2d 821) (2011) (noting that although the defendant testified that he did not consent to the search of the automobile, the resolution of the question of credibility thus presented was for the trial court and must be accepted unless clearly erroneous); *see also Tate*, 264 Ga. at 56 (3) (1994) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact.").

[14] *Morgan*, 311 Ga. App. at 743-44 (punctuation omitted); *see Jupiter v. State*, 308 Ga. App. 386, 390-91 (1) (2011) (holding that evidence that defendant's mother, who owned the home searched, consented to the search, supported trial court's denial of defendant's motion to suppress evidence obtained as a result of search).

of innocence.[15] And, of course, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[16] Thus, the jury's verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[17]

Turning to the conviction at issue, OCGA § 16-13-30.5 (a) (1) provides that "[i]t shall be illegal for a person to possess, whether acquired through theft or other means, any substance with the intent to . . . [u]se such substance in the manufacture of a . . . Schedule II controlled substance[,]" including methamphetamine. Moreover, a defendant who does not directly commit a crime nevertheless may be convicted as

---

[15] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[16] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[17] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

a party to the crime if he intentionally aids in or abets its commission.[18] And here, the State charged Thompson, individually and as a party concerned in the commission of a crime, with possession of substances with intent to use such substances for the manufacture of a controlled substance. Specifically, the State alleged that Thompson possessed the items recovered from Tyson's mobile home, which the lead investigator testified were used to manufacture methamphetamine. Thompson, nonetheless, argues that the evidence only demonstrated his presence at the scene rather than his possession, individually or as a party, of the substances in question. We disagree.

Importantly, a person is in constructive possession of an object when he "knowingly has both the power and intention at a given time to exercise dominion over the object."[19] Indeed, under Georgia law, a finding of constructive possession must "be based upon some connection between the defendant and the contraband other than spatial proximity."[20] Moreover, Thompson is correct that evidence of "mere presence at the scene of the crime, and nothing more to show participation of

---

[18] *See* OCGA § 16-2-20 (b) (3) ("A person is concerned in the commission of a crime only if he . . . [i]ntentionally aids or abets in the commission of the crime[.]").

[19] *Johnson v. State*, 335 Ga. App. 796, 797 (1) (783 SE2d 156) (2016) (punctuation omitted).

[20] *Id.* (punctuation omitted).

10

a defendant in the illegal act, is insufficient to support a conviction."[21] In fact, when the State's constructive-possession case is based "entirely on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[22] But whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are "questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law."[23]

In this case, an informant told sheriff's investigators that Thompson was going to Tyson's home to "cook" methamphetamine with Tyson.[24] When the investigators arrived at the scene, Thompson was inside Tyson's mobile home, which was

---

[21] *Id.* (punctuation omitted).

[22] *Id.* at 797-98 (1) (punctuation omitted).

[23] *Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017) (punctuation omitted); *accord Johnson*, 335 Ga. App. at 798 (1).

[24] This testimony arguably constituted hearsay, but Thompson did not object at trial and, thus, he waived any potential hearsay claim. *See* OCGA § 24-8-802 ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").

permeated by the chemical haze and pungent odor associated with the manufacture of methamphetamine. Furthermore, most of the substances seized from the home that the investigator characterized as being used in the methamphetamine manufacturing process were in plain view to anyone inside. Given these particular circumstances, the jury was authorized to conclude that Thompson was a party to the possession of the substances seized following the search.[25]

For all these reasons, we affirm Thompson's conviction.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

[25] *See Nelson v. State*, 305 Ga. App. 425, 427 (1) (699 SE2d 783) (2010) (holding that evidence defendant was in small hotel room filled with drugs and drug paraphernalia in plain view and with co-defendant supported defendant's conviction of being a party to possession with intent to distribute); *Womble*, 290 Ga. App. at 769-70 (2) (finding that the evidence showing that defendant was in co-defendant's home where methamphetamine oil was found and that odor of methamphetamine manufacturing process permeated the home was sufficient to support defendant's conviction on charges of possession of methamphetamine and criminal attempt to manufacture same).