**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 22, 2012

# In the Court of Appeals of Georgia

A12A0624. SCOTT v. THE STATE.

BLACKWELL, Judge.

Following a stipulated bench trial in Walton County, Shelli Scott was convicted of possession of methamphetamine[1] and possession of drug-related objects.[2] She appeals, asserting that the trial court erred when it denied her motion to suppress evidence that was recovered during a search of her car. Scott contends that the search of her car was unlawful because police did not have probable cause to search the car for contraband, and she argues that the search cannot be justified as an inventory search because it was not necessary to impound her car. We see no error and affirm the judgment of conviction.

---

[1] OCGA § 16-13-30 (a).

[2] OCGA § 16-13-32.2 (a).

When we review the denial of a motion to suppress, we owe no deference to the way in which the court below resolved questions of law, *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011), but we accept its findings about questions of fact and credibility unless clearly erroneous, and we view the evidence in the light most favorable to its findings and judgment. *Culpepper v. State*, 312 Ga. App. 115, 115-116 (717 SE2d 698) (2011). So viewed, the evidence in this case shows that a Monroe County police officer activated his lights to pull over Scott's car, which Tomas Wright was driving, and in which Scott was a passenger, because it had a broken taillight. Wright, however, did not pull over immediately and instead turned onto a highway and then took an exit off the highway, where he finally stopped. Although Wright stopped the car on the shoulder of the exit ramp, it was parked close enough to the road that it would have impeded a large truck from exiting the highway.

When the officer learned that Wright had a suspended license, the officer brought him to the back of the car and announced an intent to arrest him. But as the officer attempted to handcuff Wright, he ran from the scene. The officer chased him through the woods, eventually apprehended him with pepper spray, and flagged down another officer to help put Wright in custody. When the officer finally returned to the stopped car, he attempted to question Scott about her license and any outstanding

2

warrants. As a certified drug recognition expert, the officer concluded that Scott was under the influence of narcotics. She was hypervigilant, her pupils were dilated, and her muscle tone appeared rigid. The officer noticed a small jewelry bag on the ground just outside the car, and based on his training and experience, he concluded that Scott had attempted to dispose of an item containing narcotics. Before the officer searched the jewelry bag, however, he learned that Scott had a pending warrant for a probation violation involving a conviction for possession of methamphetamine, so the officer arrested Scott and placed her in the back of his patrol car.

Because both Scott and Wright had been arrested, the officer called a tow truck to remove the car from the scene, and pursuant to standard policy, a vehicle inventory search was conducted prior to impounding the car. During the search, police found syringes, needles, and a glass pipe containing methamphetamine residue in Scott's purse. They also found a glass pipe and drug paraphernalia containing methamphetamine residue in a backpack located in the trunk, though it was stipulated at trial that the backpack did not belong to Scott.

Scott first argues that the trial court erred in denying her motion to suppress because the police did not have probable cause to search her car for evidence of contraband. Pretermitting whether probable cause was present under the

3

circumstances in this case, however, the trial court correctly denied Scott's motion to suppress because the evidence was lawfully seized during an inventory search prior to impounding the car.[3] Officers are sometimes permitted to impound a car, and when they do so, they may inventory its contents to protect the property of the owner and to protect the officers from potential danger and against claims for lost or stolen property. See *Grizzle v. State*, 310 Ga. App. 577, 579 (1) (713 SE2d 701) (2011); *State v. Lowe*, 224 Ga. App. 228, 229 (480 SE2d 611) (1997). While officers cannot impound a car merely as a pretext to search for contraband, they may impound a car if they must take charge of it for some legitimate reason. See *Lewis v. State*, 294 Ga. App. 607, 611 (2) (669 SE2d 558) (2008). So, to determine whether an inventory search was authorized, we must first determine whether the impoundment was reasonably necessary under the circumstances:

> Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. In each instance, the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment.

---

[3] The State concedes that the search was not lawful as incident to her arrest on the probation violation.

*Lowe*, 224 Ga. App. at 229-230 (citations and punctuation omitted). "[T]he test is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary." *Grizzle*, 310 Ga. App. at 579 (1) (citation and punctuation omitted).

Scott argues that the officer's decision to impound her car was unreasonable under the circumstances because the officer did not ask her first if she had a preference as to the disposition of her car. We disagree. We have said before that an officer is not required to ask the owner what she would like to do with her car when the owner has been arrested and there is no one present at the scene to take custody of the car and safely remove it:

> In this case, the owner of the vehicle was under arrest, she had implicated her companion in criminal activity, and no one else remained to take custody of the car and remove it from the shopping center premises. [Cit.] Although the officer did not inquire whether the [appellant] could make other arrangements for the retrieval of her car, he was not required to do so. [Cit.]

*State v. King*, 237 Ga. App. 729, 730 (1) (516 SE2d 580) (1999). See also *Carlisle v. State*, 278 Ga. App. 528 (629 SE2d 512) (2006) ("Police officers are not required to ask whether an arrestee desires to have someone come and get the car, nor are they required to accede to an arrestee's request that they do so.") (citation and punctuation

omitted). This is especially true when the vehicle impedes or poses a potential danger to traffic. See generally *Evans v. State*, 216 Ga. App. 21, 24 (2) (453 SE2d 100) (1995) ("[T]he impoundment of the vehicle was necessary because all three of its occupants had been arrested; no one remained to take custody of the car and remove it from the side of the interstate."); *Williams v. State*, 204 Ga. App. 372, 374 (419 SE2d 351) (1992).

The cases cited by Scott do not require a different result. While many of those cases mention that officers may attempt to ascertain the preference of the owner, our decisions in those cases hinged on the fact that impoundment was unnecessary – or at least that some competent evidence supported a finding that impoundment was unnecessary – because the car was legally and safely parked on private property, a reliable friend was present, authorized, and capable of safely removing the car, or the owner of the car (who was not present at the scene) was not contacted to ask about its removal.[4] See *State v. Carter*, 305 Ga. App. 814, 818 (2) (701 SE2d 209) (2010);

_____

[4] Scott does cite one case in which this Court has suggested that police officers are required to seek instruction from an owner who has been arrested regarding disposition of her car. See *State v. Darabaris*, 159 Ga. App. 121 (282 SE2d 744) (1981). *Darabaris*, however, involved a unique factual situation, where mall security seized the defendant after he exposed himself to a mall patron, and mall security subsequently asked police officers to tow his car from the mall parking lot. That case, we think, is limited to its peculiar facts, which are not present here. In *Darabaris*, the

6

*State v. Bell*, 259 Ga. App. 328, 330 (577 SE2d 39) (2003); *Whisnant v. State*, 185 Ga. App. 51, 53 (2) (363 SE2d 341) (1987); *Mitchell v. State*, 178 Ga. App. 244, 245-246 (3) (342 SE2d 738) (1986); *Strobhert v. State*, 165 Ga. App. 515, 515-516 (301 SE2d 681) (1983); *State v. Ludvicek*, 147 Ga. App. 784, 786-787 (250 SE2d 503) (1978). Here, Scott was arrested, as was her companion, and no one remained to take custody of the car and remove it from the shoulder of the exit ramp. In addition, the officer testified that, although the car was off the roadway, it would have impeded a large truck attempting to exit the highway, and the trial court found that Scott's car was not legally parked on the side of the exit ramp.[5] Moreover, there is no evidence in the record that Scott even requested alternative arrangements for removing her car. Because competent evidence supports the trial court's conclusion that the impoundment of the car was reasonable, the resulting inventory search of the car was valid, and the trial court did not err in denying Scott's motion to suppress evidence discovered during the inventory search that followed the impoundment. See *Carlisle*, 278 Ga. App. at 530; *King*, 237 Ga. App. at 730 (1).

---

police did not cause the car to be abandoned where it was, on private mall property.

[5] We are bound to accept the trial court's findings on questions of fact and credibility unless they are clearly erroneous. See *Williams v. State,* 204 Ga. App. 372, 374 (419 SE2d 351) (1992).

7

*Judgment affirmed. Mikell, P. J., and Miller, J., concur.*