**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A1354. WILLIAMS v. THE STATE.

BRANCH, Judge.

Following a stipulated bench trial in Henry County Superior Court, Gerald M. Williams was found guilty of trafficking in cocaine.[1] He now appeals his conviction, arguing that the court below erred in denying his motion to suppress the evidence police seized from him during a *Terry*[2] pat-down of his person. Finding that the contraband at issue was seized in violation of Williams's Fourth Amendment rights, we reverse his conviction.

---

[1] OCGA § 16-13-31 (a).

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

Where, as here, the relevant facts are undisputed, we review the denial of the motion to suppress de novo.[3] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). See also *Scott v. State*, 316 Ga. App. 341, 341 (729 SE2d 481) (2012) ("[w]hen we review the denial of a motion to suppress, we owe no deference to the way in which the court below resolved questions of law") (citation omitted).

The evidence in this case consisted of the testimony of the arresting officer and a video recording of the traffic stop that resulted in Williams's arrest. This evidence shows that Williams was a passenger in a car that was stopped by a Henry County police officer for following too closely. After he pulled the car over, the officer explained to its occupants why he had initiated the traffic stop and told the driver he was going to issue him a warning, rather than a citation. At the officer's request, the driver exited his vehicle and went to the rear of his car to speak with the officer. As the driver was exiting his vehicle, the officer spoke to Williams, asking him "Do you mind if I see your i.d.? Do you have any?" On the recording, Williams's verbal response is unintelligible, but it is undisputed that he handed the officer his driver's license.

---

[3] There is a videotape of the incident in question. Further, the trial court made no factual findings.

The officer then spent approximately four minutes making conversation with the driver as he wrote out the warning. After he completed the warning, the officer returned to the stopped car and spoke with Williams for approximately one minute.[4] The officer then told the driver that he needed to run a check on both men's driver's licenses. Before he initiated that check, however, the officer asked for and received permission to perform a *Terry* pat-down of the driver.[5] After completing that pat-down, and approximately nine minutes after he began the traffic stop, the officer returned to his patrol car and contacted dispatch to request a check of the driver's licenses belonging to the driver and Williams.[6] The officer then exited his vehicle and asked for and received the driver's permission to search the stopped car.

---

[4] The officer determined that all of the information on Williams's driver's license was correct and, as he did with the driver, the officer questioned Williams about where the men had been and where they were going.

[5] While conducting the pat-down, the officer observed a pocket knife in the driver's pants pocket. He asked the driver to remove the knife and the driver did so, giving the weapon to the officer.

[6] According to the officer, he had to make the request for a driver's license check from inside the patrol car because of poor radio reception on that part of the interstate where the traffic stop occurred. This poor reception prevented the officer from transmitting and receiving information on the radio worn on his body.

Prior to searching the car, the officer approached the passenger side, where Williams was seated, and asked him to step out of the vehicle, explaining that the driver had given his permission for a search of the automobile. Williams exited the car, but when he tried to move away from it the officer blocked his way and asked Williams "Do you mind if I pat you down?" Williams responded, "I don't mind." The officer proceeded with the pat-down, and felt a bulge in one of the lower-side pockets of Williams's cargo pants. According to the officer, he had "no idea" what the bulge was, but it did not feel like a weapon.

When the officer asked Williams what he had in his pocket, Williams replied "just candy." The officer asked, "Do you mind if I see it?" Williams responded, "yes, sir," and he turned slightly, as if he were going to move away from the car. The officer reacted by partially closing the car door towards Williams, thereby preventing Williams's movement, while directing Williams to "stay right there." Then, ignoring Williams's initial refusal to show the officer the contents of his pocket, the officer again asked Williams to open the pocket. Williams did so and removed the item, which proved to be a rolled-up, paper bag. The officer asked Williams, "Can you open it [the bag]?" and Williams gave a response that, on the recording, sounds like "I guess." The officer asked what was in the bag, and either Williams or the driver again

replied "candy." As he asked that question, the officer removed the bag from Williams's hand and asked Williams a second time, "Can you open it up?" Before Williams could respond, the officer asked "Do you mind if I open it [the bag]?" On the tape, Williams can be heard responding with what sounds like the word "yes," which he argues means that "yes, he did mind" if the officer opened the bag.[7] The officer, however, proceeded to open the bag, saw what he believed to be cocaine,[8] and immediately placed both Williams and the driver under arrest.

On appeal, Williams asserts that the officer's conduct that led to the discovery and seizure of the cocaine exceeded the scope of a constitutionally permissible *Terry* pat-down and therefore violated his Fourth Amendment rights. We agree.

This court has explained repeatedly that the narrow purpose of a *Terry* pat-down is to ensure the safety of the officer and others at the scene, and that its purpose is *not* to obtain evidence of crimes for use at trial. See, e.g., *Ware v. State*, 309 Ga. App. 426, 428 (710 SE2d 627) (2011); *Johnson v. State*, 297 Ga. App. 847, 848 (678

---

[7] In its brief, the State contends that Williams's response is inaudible. Resolution of this factual dispute, however, is irrelevant to our analysis. Even assuming that Williams offered no objection in response to the officer's query, we still find he did not consent to the opening of the bag.

[8] Evidence presented at Williams's trial showed that the bag contained approximately 249 grams of cocaine.

SE2d 539) (2009); *Sudduth v. State*, 288 Ga. App. 541, 542 (2) (654 SE2d 446) (2007). Any search which exceeds this constitutionally permissible purpose, therefore, is deemed "constitutionally unreasonable," and any evidence resulting from such a search must be excluded. (Citation omitted.) *State v. Jourdan*, 264 Ga. App. 118, 122 (2) (589 SE2d 682) (2003). Thus, under *Terry* and its progeny an officer is authorized to pat down only a suspect's "outer clothing." *Johnson*, 297 Ga. App. at 848. A police officer may reach into or under a suspect's clothing in only two instances: "(1) if he comes upon something that feels like a weapon[;] or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the 'plain feel' doctrine." (Punctuation and footnote omitted). *Ware*, 309 Ga. App. at 428. To justify searching in or beneath a suspect's clothing for a weapon, an officer must either detect "something which feels [reasonably] like a weapon" or he "must be able to point to specific and articulable facts which . . . support a [reasonable] suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down." (Citation and footnote omitted.) *Jourdan*, 264 Ga. App. at 122 (2). Similarly, under the plain-feel doctrine, an officer may intrude under a suspect's clothing only where, "during a lawful pat-down search, an officer feels an object whose contours or mass makes it immediately identifiable as contraband," and

6

the officer, through his testimony, "express[es] a degree of certainty in identifying the item." *Mason v. State*, 285 Ga. App. 596, 597 (647 SE2d 308) (2007).

In this case, the undisputed evidence shows that the officer could not readily identify the bulge in Williams's pocket as either a weapon or contraband. The officer admitted unequivocally that he had "no idea" what the bulge was until he opened the paper bag and discovered the cocaine. He further stated that the object did not feel like a weapon to him, and during his testimony he never indicated that, upon feeling the object, he suspected it was contraband. Additionally, the officer testified unequivocally that at the time he conducted the pat down, Williams presented no danger to him, and he offered no testimony indicating that he had a reasonable basis for believing that Williams might be armed with any kind of weapon. Under these circumstances, we must conclude that the officer's conduct in requiring Williams to open up his pocket and withdraw the bag exceeded the scope of a constitutionally-permissible *Terry* pat down. See *Brown v. State*, 293 Ga. App. 564, 566 (1) (667 SE2d 410) (2008) (reversing denial of motion to suppress cocaine housed in a cigar box and seized during a *Terry* pat-down where officer testified that he felt the corner of a hard object and pulled it from the defendant's pocket based on his belief that "'anything can house a weapon'"); *Sudduth*, 288 Ga. App. at 542 (reversing denial of motion to

7

suppress methamphetamine seized during a *Terry* frisk, where officer testified he felt a bulge in the suspect's pocket and removed the item "'not knowing what it was, a weapon, could have been anything'"); *Jourdan,* 264 Ga. App. at 121–123 (2) (affirming grant of motion to suppress after finding that the police officer was not authorized to open cigarette box which he ordered defendant to remove from his pocket during a consensual pat-down; although the officer testified that such boxes could contain a concealed weapon, he had no reasonable belief that the defendant was armed and trying to conceal a weapon in the box).

Nor do we find that Williams consented to the search. We note that it is the State that bears the burden of proving that Williams voluntarily consented to the removal of the bag and the subsequent search thereof, and we are required to scrutinize closely any alleged consent given by a suspect to police, *Johnson*, 297 Ga. App. at 848, bearing in mind that "[m]ere acquiescence to the authority asserted by a police officer cannot substitute for free consent." (Citation and footnote omitted.) *Jourdan*, 264 Ga. App. at 121 (1). The standard for determining consent "is that of objective reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Johnson*, 297 Ga. App. at 849. In other words, we must ask whether a reasonable person in Williams's situation

8

would have felt free to keep the bag in his pocket or otherwise terminate the encounter. Id.

Given the evidence, the State cannot meet its burden of showing that Williams voluntarily removed the bag from his pocket. The tape of the incident shows that after Williams indicated he did not want the officer to see what he had in his pocket and attempted to move away, the officer blocked Williams's movement with both the car door and the officer's body and directed Williams to open the pocket. When Williams began to open a pocket other than the one containing the paper bag, the officer redirected him to the pocket holding the bag by pointing to it and telling Williams, "no, this one [pocket] right here." And although the officer does not expressly order Williams to remove the bag from his pocket and open it, both the officer's conduct towards and verbal direction given to Williams, shown on the videotape, and the officer's testimony at the motion to suppress hearing indicate that Williams had no choice but to produce the bag and surrender it to the officer.[9] This evidence demonstrates that a reasonable person in Williams's position would not have "felt free to decline the officer[']s request [to show him the bag] or otherwise terminate the

---

[9] It is notable that the officer did not testify that Williams voluntarily opened his pocket and withdrew the bag.

9

encounter." (Citation and punctuation omitted.) *Johnson*, 297 Ga. App. at 849 (reversing denial of motion to suppress where State failed to prove that defendant had voluntarily consented to a search of the contents of his pocket). See also *Jourdan*, 264 Ga. App. at 121 (1).

For the reasons explained above, we find that the officer's conduct that resulted in the discovery and seizure of the cocaine exceeded the scope of a permissible *Terry* pat-down and thereby violated Williams's Fourth Amendment rights. Id. Accordingly, the trial court erred in refusing to grant Williams's motion to suppress the cocaine.

*Judgment reversed. Miller, P. J., and Ray, J., concur.*