**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 16, 2018**

# In the Court of Appeals of Georgia

A17A1833. THE STATE v. MCCLOUD.

BARNES, Presiding Judge.

Roverto McCloud was charged with possession of cocaine, possession of a firearm during the commission of a that felony, possession of a firearm by a convicted felon, and failure to have his driver's license on his person while operating a motor vehicle. McCloud filed a motion to suppress the drug and gun evidence, which the trial court initially denied, but upon reconsideration, granted. The State appeals from that order and contends that the trial court erred in finding that the officer's search of McCloud was unreasonable under the Fourth Amendment because he was not under arrest at the time of the search, but merely detained. Upon our review, and finding that the search was lawful, we reverse the trial court's grant of McCLoud's motion to suppress.

Upon our review of a trial court's ruling on a motion to suppress, we are guided by three principles;

[f]irst, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Punctuation omitted.) *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013), quoting *Miller v. State*, 288 Ga. 286, 286-287 (702 SE2d 888) (2010).

So viewed, the evidence, as testified to by the only witness at the motion to suppress hearing, demonstrates that a patrol officer with the Atlanta Police Department observed a "pretty bad" two car accident and stopped to investigate and assist the victims. Each car was occupied by two passengers, and McCloud was in the driver's seat of one of the cars. McCloud told the officer that his wallet was at home and that he did not have his driver's license. The officer asked McCloud to step out of the car, then handcuffed McCloud "to detain him. . . because [the officer] needed to figure out everything that was going on in the situation." The officer testified that he routinely handcuffs individuals who do not have their driver's license, "because

of the nature of [his] assignment" and confirmed that he does so to detain them until he "can find out who [they] are."

The officer testified that although there was probable cause to arrest McCloud for "not having [his] driver's license [on his person]," McCloud was only detained at that point "to identify who he was."

Regarding the encounter, the officer testified that

[McCloud] seemed a little tense about the whole situation. It kind of made me nervous. We had a conversation about what was – why was he being so tense. He relaxed. I put him in handcuffs and moved him to the car. When I got to the vehicle, as per our standard, before you put any person in a vehicle, you frisk them incident to placing them in the back of the vehicle. Plus, the nature of the area, it's a violent crime area, lots of incidents in my knowledge, training and experience that occur in that area. So I frisked him for weapons. Upon frisking him for weapons, I felt an object that was immediately recognizable as a baggy of some sort, called contraband. I seized that item. It ended up being 10 grams of powder cocaine.

The baggy was located in "one of [McCloud's] pockets. According to the officer's testimony, "at this point [McCloud] was under arrest. I [had] just seized narcotics from his person. So I went ahead and did a complete, thorough search before putting him in the vehicle." The officer retrieved a loaded .22 caliber magazine

3

from McCloud's pocket and, during his subsequent search of McCloud's vehicle "incident to arrest as well as impound from the accident, because it was not drivable . . . located a .22 caliber handgun missing its magazine . . . in the center console."

McCloud filed a motion to suppress the drug and gun evidence, which after a hearing, the trial court denied. The trial court determined that the search of McCloud's person and car "were lawful" because "[a]t the time [McCloud] was put in handcuffs and searched, probable cause existed for an arrest on the traffic violation of driving without a license." McCloud filed a motion to reconsider, after which, the trial court granted McCloud's motion to suppress the drug and gun evidence.

In reversing its prior disposition, the trial court found that there

> was probable cause. . . to arrest [McCloud] when he failed to produce his license. . . [but McCloud] was not *in fact* placed under arrest at that juncture. Instead the officer, in his discretion, chose not to arrest [McCloud] and instead merely intended to temporarily detain him until his identification could be obtained and the officer further investigated the collision. Therefore, the Court should have analyzed the pat-down as a Tier 2 search. The Court finds the temporary detainment and handcuffing of [McCloud] was lawful. However, there is no evidence taht [the officer] reasonable believed [McCloud] was armed or presented a danger to the officer or others when he conducted the Tier 2 pat-down. . . . [A]n automatic police procedure of patting down persons being

4

detained in a police car does not make an unconstitutional search constitutional. (Emphasis in original).

On appeal, the State contends that the existence of probable cause to arrest McCloud for driving without his driver's license in his immediate possession rendered the search a valid search incident to an arrest. We agree.

Police officers are "authorized to arrest [a defendant] for the commission of a traffic offense in their presence." *Ridgeway v. State*, 205 Ga. App. 218 (422 SE2d 4) (1992).[1] OCGA § 17-5-1 further authorizes an officer, after making a lawful arrest, to search the defendant's person and the area within his immediate presence for the purpose of protecting the officer from attack, preventing the defendant from escaping, or discovering or seizing the fruits of the crime or any articles used in the commission of the crime.

If, when arrest is made, the facts and circumstances known to the arresting officer are sufficient to warrant a prudent person in believing that the accused had

---

[1] "Every licensee shall have his or her driver's license in his or her immediate possession at all times when operating a motor vehicle." OCGA § 40-5-29 (a). And "[e]very licensee shall display his or her license upon the demand of a law enforcement officer. A refusal to comply with such demand not only shall constitute a violation of this subsection but shall also give rise to a presumption of a violation of subsection (a) of this Code section and of Code Section 40-5-20." OCGA § 40-5-29 (b).

5

committed or is committing an offense, the warrantless arrest passes constitutional muster. *Callaway v. State*, 257 Ga. 12, 13-14 (2) (354 SE2d 118) (1987). "Because the standard for probable cause depends on what a reasonable officer could have concluded from those facts and circumstances, the standard of probable cause is an objective one, and the subjective thinking of the actual officers in a particular case is not important." *Hughes v. State*, 296 Ga. 744, 749 (2) (770 SE 2d 636) (2015). "The existence of probable cause authorizes a search incident to arrest . . . even if an officer believes that he is, at the moment the search is undertaken, detaining rather than arresting the person searched."(Citations and punctuation omitted.) *Coney v. State*, 316 Ga. App. 303, 307 (3) (a), (b) (728 SE2d 899) (2012). See *State v. Hargis*, 294 Ga. 818, 824 (2) (756 SE2d 529) (2014) ("That the officer still wished to more definitively identify Hargis, and that the officer did not tell Hargis until a few moments later that he was under arrest, does not change the fact that Hargis was under arrest for the purposes of the Fourth Amendment at the time that the officer directed him from the truck and handcuffed him."); *Harvey v. State*, 266 Ga. 671, 672 (469 SE2d 176) (1996) ("resolution of this case ultimately is dependent upon whether, at the time of [the] arrest, the officer had probable cause to make that arrest.")

"Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." *Hughes*, 296 Ga. at 750 (2). In doing so, we find in this case that notwithstanding the officer's subjective belief that he was detaining rather than arresting McCloud when he was handcuffed, for purposes of the Fourth Amendment, the officer had probable cause to arrest McCloud for driving without a driver's license and the ensuing search of his person was incident to an arrest pursuant to OCGA § 17-5-1.

Regarding the gun evidence retrieved from McCloud's car, we need not address whether the search was lawful as a search incident to arrest given that the officer also testified that the search was made in preparation to impound the car because McCloud's car was not drivable.[2] *Scott v. State*, 316 Ga. App. 341, 342-43 (729 SE2d 481) (2012) (when officers impound a car, "they may inventory its contents to protect the property of the owner and to protect the officers from potential

---

[2] See *Arizona v. Gant*, 556 U.S. 332, 35 (VI) (129 SCt 1710, 173 LE2d 485) (2009) ("[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.")

danger and against claims for lost or stolen property"); *Grimes v. State*, 303 Ga. App. 808, 812 (1) (b) (695 SE2d 294) (2010) (a search of a vehicle incident to a lawful arrest of its occupant and an inventory search of a vehicle in preparation for impoundment are two alternatives for determining whether a search of a vehicle was lawful).

> [W]hile the police may not impound a car to search for contraband, they may impound a vehicle if they must take charge of it for some reason. And ultimately, the test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment.

(Footnotes and punctuation omitted.) *Grizzle v. State*, 310 Ga. App. 577, 579 (1) (713 SE2d 701) (2011). Here, given the facts in this case, including the vehicle's involvement in a serious accident, it being inoperable, the passenger's injury and transport to the hospital, and McCloud's arrest, it was not unreasonable under the Fourth Amendment and the circumstances facing the officer at the time for him to have McCloud's vehicle impounded. Further,

> an officer is not required to ask the owner what [he] would like to do with [his] car when the owner has been arrested and there is no one present at the scene to take custody of the car and safely remove it[.] .

8

. . Although the officer did not inquire whether [McCloud] could make other arrangements for the retrieval of [his] car, he was not required to do so. . . . This is especially true when the vehicle impedes or poses a potential danger to traffic.

(Citations and punctuation omitted.) *Scott v. State*, 316 Ga. App. at 343.

Accordingly, we reverse the order of the trial court granting McCloud's motion to suppress.

*Judgment reversed. McMillian and Mercier, JJ., concur.*

.