**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 24, 2020**

# In the Court of Appeals of Georgia

A20A0759. WOMACK v. THE STATE.

Rickman, Judge.

Following a stipulated bench trial, Christopher Womack was convicted of possession of less than one ounce of marijuana. He appeals, contending that the trial court erred by denying his motion to suppress evidence found during the search and seizure that led to his arrest. For the reasons that follow, we reverse.

"In reviewing a trial court's ruling on a motion to suppress, this Court must construe the record in the light most favorable to the factual findings and judgment of the trial court and accept the trial court's findings of disputed fact unless they are clearly erroneous." (Citations omitted.) *State v. Turner*, 304 Ga. 356, 356 (818 SE2d 589) (2018). Further, "[a]n appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court." (Citations and

punctuation omitted.) *Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018). "[T]he trial court's application of the law to undisputed facts is subject to de novo review." (Citations and punctuation omitted.) *State v. Clay*, 339 Ga. App. 473, 473 (793 SE2d 636) (2016). Finally, the burden of proving the validity of a consensual search is on the State. See *Thompson v. State*, 348 Ga. App. 609, 612 (1) (824 SE2d 62) (2019).

The trial court found as a matter of fact that an officer observed Womack exit a tobacco shop, "look[] around," and, when he noticed the officers's patrol car, begin to "power walk" in the other direction. The officer believed that this behavior, which occurred in a "high crime/high drug area," may have constituted loitering. The officer then approached Womack, asked if he could see Womack's identification, and asked for consent to search his person, which Womack gave.

The court further found that when the officer attempted to take off Womack's backpack in order to perform the search, Womack pulled away, and the officer grabbed his wrist. The court found that "simultaneously" Womack said, "wait, wait, there is marijuana in my backpack." Inside the backpack the officer found a Mason jar that contained two clear packages of marijuana and a digital scale. The officer then arrested Womack for possession of less than one ounce of marijuana.

The court concluded as a matter of law that the officer did not detain or seize Womack when he first approached Womack and questioned him and that Womack consented to a search. But the court also found that "[b]ased upon [Womack's] demeanor, his attempt to avoid the [o]fficer, [and] his presence with a backpack in a high crime/high drug area, [the officer] had a particularized and objective basis for suspecting that [Womack] was involved in criminal activity." The court further found that after the officer "touched the backpack for the legitimate purpose of conducting the consent search of [Womack's] person, [Womack's] demeanor instantly changed and he pulled away from the officer," which justified the officer in believing that there must be weapons or contraband in the backpack; the court continued, "but before he could come to this justifiable conclusion, [Womack] made the spontaneous statement that there was marijuana in the backpack." The court found that this statement was made prior to Womack being in custody and not in response to any questions asked by the officer. Accordingly, the trial court denied Womack's motion to suppress.

On appeal, Womack contends the trial court erred by denying the motion to suppress. He argues that the officer conducted a second-tier encounter[1] without reasonable articulable suspicion of criminal activity and thus his consent was invalid; that even if the encounter was consensual, the officer did not have Womack's consent to search the backpack; and that Womack withdrew his consent to search when the officer grabbed the backpack.

1. We first hold that although the trial court did not err in finding that Womack initially was not detained, the court clearly erred in findings of fact concerning the precise timing of the events during the officer's encounter with Womack. Critically, the undisputed facts show that Womack confessed to marijuana in the backpack after he had been detained.

(a) The trial court did not clearly err in concluding that the officer did not detain Womack initially.

"The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the

---

[1] "There are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief stops or seizures that must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause." (Citation and punctuation omitted.) *Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 456) (2012).

circumstances." (Citation and punctuation omitted.) *Ohio v. Robinette*, 519 U.S. 33, 40 (117 SCt 417, 136 LE2d 347) (1996). "So long as a reasonable person would feel free to 'disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." (Citation and punctuation omitted.) *Florida v. Bostick*, 501 U.S. 429, 434 (II) (111 SCt 2382, 115 LE2d 389) (1991).

Here, the officer testified that he exited his patrol car, approached Womack on foot, and asked to see his identification; that he did not block Womack's path to the highway; that Womack could have walked away; and that Womack was cooperative and was free to leave at the time that he consented to the search. The officer also consistently testified that he was only conducting a first-tier encounter and that at all times prior to grabbing Womack's wrist, he was free to leave. Thus, the trial court's finding that the officer did not detain or restrain Womack before asking him for his identification and consent to search is supported by the evidence and therefore not clearly erroneous. See *Grant v. State*, 246 Ga. App. 376, 377 (2) (540 SE2d 634) (2000).

(b) The court clearly erred, however, when it found that Womack was not detained when he confessed to the marijuana.

The court found that when the officer grabbed Womack's wrist, Womack "simultaneously" stated that there was marijuana in his backpack. On this topic, the officer first testified generally that "at the time I grabbed his wrist and I was going to detain him and he said wait, wait, wait, there is marijuana in my backpack." Later, after referring to the police report of the incident that he prepared, the officer acknowledged that when he grabbed Womack's wrist, Womack said that there was "something" in the backpack that was not his. The officer *then asked* Womack what the something was. Only then did Womack state that there was marijuana in the backpack. Thus the correct order of the relevant events is this: the officer took hold of the backpack; Womack pulled away; the officer grabbed Womack's wrist; Womack said that there was something in his backpack; the officer asked what it was; Womack stated that it was marijuana.

Next, the court found that the statement that there was marijuana in the backpack "was made prior to [Womack's] being in custody and was not made in response to any questions asked by the officer." The evidence on this topic was that, in response to the court's own question, the officer clearly admitted that once he grabbed Womack's wrist, Womack was not free to leave. And, as shown above, *after*

grabbing Womack's wrist, the officer asked Womack what was in the backpack. It was then that Womack confessed to marijuana in the backpack.

Accordingly, at the time that Womack confessed to the marijuana, he clearly was being detained. "[A] seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." (Citation and punctuation omitted.) *State v. Walker*, 295 Ga. 888, 890 (764 SE2d 804) (2014); see also *Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 456) (2012). It follows that unless the officer was legally authorized at that point to detain Womack, the confession was a product of an illegal detention.

2. We next hold as a matter of law that none of the reasons articulated by the trial court justified the officer in grabbing Womack's wrist.

(a) The court made multiple somewhat conflicting conclusions of law that relate to the question of whether the officer was authorized to detain Womack. The court first held that at the time the officer made contact with Womack, he had sufficient information to conduct a tier-two stop as follows: The court held as a matter of fact that

> [The officer] believed that the behavior of the defendant in an area that he described as a high crime/high drug area may have risen to the level

7

of a violation of OCGA 16-11-36[,] the statute which prohibits loitering.

This finding of fact as to what the officer believed is supported by the officer's testimony. But the court then held as a matter of law that

> Based upon [Womack's] demeanor, his attempt to avoid the [o]fficer, [and] his presence with a backpack in a high crime/high drug area, [the officer] had a particularized and objective basis for suspecting that [Womack] was involved in criminal activity."

In this conclusion, the trial court erred. "At best, the officer's stated reasons raised a subjective, unparticularized suspicion or hunch." *Walker v. State*, 299 Ga. App. 788, 791 (1) (683 SE2d 867) (2009).

The officer testified that when he first saw Womack walk out of the store, "[h]e seemed like a regular person. He just walked out the store." But because Womack then "looked around, noticed us and started to power walk off," the officer developed a suspicion that "something might be up," or that Womack was "committing some kind of crime." When asked, "What were you suspicious of at that point?," the officer replied, "I was just suspicious of a possible crime." When asked what made him speak with Womack, the officer replied, "His demeanor." But the officer was not certain that Womack even noticed the patrol car before his power walk. He added that

8

he had "located drugs in backpacks in high crime areas late at night," but he never testified that seeing Womack wearing a backpack added to his suspicions. The officer also testified that based on Womack "power walk[ing] away," he "believed it was borderline loitering." The officer referred to unspecified law that (in his own words) provided that "if somebody notices my vehicle and takes flight, which power walking would be borderline, that is loitering." Yet the officer also testified that at the time that he made contact with Womack, "no crime ha[d] been committed." Finally, the officer himself never testified that he had sufficient information to conduct a tier-two stop.

Setting aside the suspected loitering for the moment, the remainder of the officer's testimony was nothing more than a hunch that "something was up" or that Womack was "committing some kind of crime." This is not an objective basis for conducting a tier-two stop. See *Walker*, 299 Ga. App. at 791 (1). For example, in *Williams v. State*, 327 Ga. App. 239 (758 SE2d 141) (2014), narcotics officers surveilling apartments where previous arrests had been made became aware of a strong odor of marijuana coming from one apartment where they had observed heavy foot traffic coming and going. Id. at 240. Williams arrived carrying a backpack; he walked into the apartment, stayed less than five minutes, exited with the same

backpack, and drove away. Id. at 241. This Court held that evidence from a subsequent traffic stop of Williams was inadmissible because, even though Williams's conduct appeared to fit a pattern of behavior of individuals going in and out of a suspected drug house, "absent some particularized suspicion of wrongdoing, merely acting in a way that fits a known 'pattern' of criminal activity—does not justify an investigatory stop." (Citation and punctuation omitted.) Id. at 244. Accordingly, the investigatory stop "was not based on a particularized and objective suspicion that Williams was engaged in criminal activity." Id. The facts are even weaker here, where the officer only had a subjective unparticularized suspicion of wrongdoing.

With regard to the suggestion that Womack was loitering, the officer appears to have been referring to OCGA § 16-11-36.[2] But the officer failed to remember that

---

[2] OCGA § 16-11-36 provides as follows:
(a) A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

(b) Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon

10

loitering requires a person to be "in a place at a time or in a manner not usual for law-abiding individuals." Id. And there is no such testimony here. Indeed, Womack was leaving a store that was open when the officer saw him.

In sum, to the extent the trial court concluded that the officer had sufficient information when he approached Womack to detain him for a second tier investigation, the trial court erred. See *Williams*, 327 at 244.

(b) The court's other conclusion was that as the officer touched the backpack as a part of conducting the consensual search, Womack's "demeanor instantly changed and he pulled away from the officer." The court held that, accordingly, "[t]he officer would have been justified in believing that there must be weapons or contraband in the backpack." That the officer at this point thought, in general, that there could be a weapon in the backpack is supported by the evidence.

But the officer never testified that he grabbed Womack's wrist in an effort to protect himself, or in the name of officer safety, or because he feared that Womack was about to grab a weapon. "[T]he narrow purpose of a *Terry* pat-down is to ensure the safety of the officer and others at the scene, . . . not to obtain evidence of crimes

the appearance of a law enforcement officer . . . .

11

for use at trial." *Williams v. State*, 318 Ga. App. 715, 717 (734 SE2d 535) (2012).[3] "Any search which exceeds this constitutionally permissible purpose, therefore, is deemed 'constitutionally unreasonable,' and any evidence resulting from such a search must be excluded." (Citation and punctuation omitted.) Id. In *Williams*, this Court found that a *Terry* search exceeded its authorized scope in part because the officer testified that "Williams presented no danger to him, and he offered no testimony indicating that he had a reasonable basis for believing that Williams might be armed with any kind of weapon." Id. at 718.

Here, Womack consented to a search of his person, and a search of the backpack would exceed the scope of the search. See *Walker*, 299 Ga. App. at 791 (2) ("The intrusiveness of a consensual search—including the type, duration, and physical zone of the intrusion—is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken.") (footnote omitted.) Indeed, the officer admitted that he grabbed the backpack in order to search Womack's outer clothing. Furthermore, because the officer and Womack were

_____

[3] "[W]hen a defendant consents to a pat-down search, such consent extends to that authorized by the parameters of a search under *Terry*." *State v. Andrews*, 320 Ga. App. 792, 795 (740 SE2d 748) (2013).

12

engaged in a consensual encounter, Womack was at all times free to terminate the search or walk away:

> [A] citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Indeed, even running from police during a first-tier encounter is wholly permissible. And an individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint.

(Citation and punctuation omitted.) *Brown v. GeorgiaCarry.org*, 331 Ga. App. 890, 896 (770 SE2d 56) (2015). It follows that it was reasonable for Womack to pull away when he noticed the officer had grabbed his backpack. See *Ware v. State*, 309 Ga. App. 426, 428 (710 SE2d 627) (2011) (voluntary consent may be revoked or withdrawn). Accordingly, the trial court erred by concluding that the officer had authority to grab Womack's wrist and detain him merely because Womack pulled away when the officer took hold of Womack's backpack.

In sum, because the officer was not legally authorized to detain Womack when he grabbed his wrist, the subsequent confession that there was marijuana in the backpack was a product of an illegal detention.[4]

---

[4] The State has not argued that Womack's statement was "sufficiently attenuated or distinguishable from the illegality to be purged of any taint." (Citation and punctuation omitted.) *Corey v. State*, 320 Ga. App. 350, 357 (1) (c) (739 SE2d

13

For the above reasons, we reverse the denial of Womack's motion to suppress.

*Judgment reversed. Dillard, P. J., and Brown, J., concur.*

---

790) (2013).