**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 18, 2024**

# In the Court of Appeals of Georgia

A23A1239. MCANNALLY v. THE STATE.

A23A1242. BYRD v. THE STATE.

WATKINS, Judge.

Tamera Marie McAnnally and Philip Byrd appeal the denial of their respective motions for new trial following a joint jury trial. After observing Byrd's un-safe driving, police pulled over a truck Byrd was driving with McAnnally as a passenger. As a result of this traffic stop, both Byrd and McAnnally were arrested. A jury found McAnnally guilty of possession of a firearm by a convicted felon and obstruction of a police officer.[1] Byrd was found guilty of several crimes, but appeals only his conviction

---

[1] See OCGA § § 16-11-131 (b); 16-10-24 (a).

for possession of a firearm by a convicted felon. We discern no error and affirm the trial court in both cases.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor determine witness credibility, which are tasks that fall within the exclusive province of the jury, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence shows that in the early morning hours of January 30, 2022, two officers with the City of Ringgold Police Department witnessed a truck that was towing a boat run two red lights and drive back-and-forth across traffic lanes. The officers activated their lights and sirens, and the truck pulled over on the side of an entrance ramp to Interstate 75. Byrd, who was driving the truck, was acting erratically. He had looped his seatbelt through the steering wheel of the truck, laughed at odd times, and gnashed his teeth. McAnnally was sitting in the passenger seat of the truck.

One of the officers smelled alcohol on Byrd and instructed him to exit the truck; after a brief resistance, he complied. Prior to his exit from the truck, an officer noticed

---

[2] (Citations omitted.) *Allison v. State*, 356 Ga. App. 256 (846 SE2d 222) (2020).

Byrd's hand go down towards the center console area. Byrd completed the horizontal gaze nystagmus and walk-and-turn field sobriety tests and showed clues of impairment on both. Officers determined that Byrd was driving under the influence to the extent it was less safe for him to drive, and he was arrested. It was still dark outside and the truck with the boat still attached was parked around the shoulder of the highway entrance ramp. The officers believed this created an unsafe situation.[3] McAnnally did not have a valid driver's license, so she was unauthorized to drive the truck away. Byrd told the officer that the truck belonged to his mother, which was confirmed by officers, and that she could drive it away. McAnnally also claimed to officers that she had called Byrd's mother and that his mother was on her way to pick up the truck. Officers decided, however, to call a tow truck and impound the vehicle.

While Byrd performed his field sobriety tests, McAnnally remained in the passenger seat of the truck and rolled up the windows and locked the doors. An officer instructed McAnnally to exit the truck multiple times, but she refused. The officer informed McAnnally multiple times that if she did not open the door, he would break

---

[3] The officers testified that the truck had an unpermitted amber light on the back, but there was no evidence presented that this created a safety issue as opposed to merely being an equipment violation.

the truck's window and forcibly remove her, but she continued to refuse to exit. Ultimately the officer used his baton to break the driver side window, and McAnnally was removed and arrested for obstruction of a law enforcement officer.

After arresting McAnnally, the truck was searched and an officer located a loaded revolver in the crevice between the driver seat and center console. As a result of this traffic stop, McAnnally was convicted of being a felon in possession of a firearm and obstruction of a law enforcement officer. Relevant to this appeal, Byrd was convicted for being a felon in possession of a firearm. McAnnally and Byrd separately moved for a new trial, and following a joint evidentiary hearing, both motions were denied. These appeals followed.

*Case No. A23A1239*

1. McAnnally contends that the evidence was insufficient to sustain either of her convictions. We disagree.

Georgia law is clear that

[w]hen evaluating the sufficiency of evidence as a matter of due process under the Fourteenth Amendment to the United States Constitution, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. [The reviewing court] views the evidence in the light most favorable to the verdict, with

4

deference to the jury's assessment of the weight and credibility of the evidence.[4]

With this standard in mind, we will examine McAnnally's convictions.

*(a) Felon in Possession of a Firearm*

In Georgia, any person who has previously been convicted in this State of a felony "who receives, possesses, or transports a firearm commits a felony."[5]

> The law recognizes that possession can be actual or constructive, sole or joint. A person has actual possession of a thing if [she] knowingly has direct physical control of it at a given time. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. If one person alone has actual or constructive possession of a thing, possession is sole, but if two or more persons share actual or constructive possession of a thing, possession is joint.[6]

---

[4] (Citations and punctuation omitted.) *Burney v. State*, 309 Ga. 273, 277 (1) (a) (845 SE2d 625) (2020).

[5] OCGA § 16-11-131 (b).

[6] (Citation and punctuation omitted.) *Maddox v. State*, 322 Ga. App. 811, 812 (746 SE2d 280) (2013).

"Mere proximity to contraband, absent other evidence connecting a suspect with that contraband, is not enough to establish constructive possession."[7] "Constructive possession can be proven — and very often is proven — by circumstantial evidence. Of course, as with any charge based on purely circumstantial evidence, in order to support a conviction the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant."[8] "[T]he evidence need not exclude every conceivable inference or hypothesis — only those that are reasonable."[9] "[Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and that finding will not be disturbed unless the verdict of guilty is unsupportable as a matter of law."[10]

Here, there was sufficient circumstantial evidence that McAnnally constructively possessed the firearm. In addition to being proximately close enough to the firearm in the cabin of the pickup truck to access it, she behaved in such a way

---

[7] (Citation and punctuation omitted.) *Hill v. State*, 360 Ga. App. 143, 146-147 (860 SE2d 893) (2021).

[8] (Citation and punctuation omitted.) Id. at 147-148.

[9] (Citation and punctuation omitted.) Id. at 149.

[10] (Citation and punctuation omitted.) *Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017).

that a jury could determine demonstrated her knowing power and intent to exercise dominion or control over the firearm. When instructed by police multiple times to exit the dangerously parked vehicle, she resisted to the point of requiring the officer to smash a window and forcibly remove her. Just as a jury is authorized to find intent to exercise power and control over contraband by a suspect attempting to flee or elude police, the jury here was authorized to find that McAnnally's suspicious conduct demonstrated knowledge by McAnnally of the firearm's presence and her intention to prevent officers from discovering it.[11]

*(b) Obstruction of a Law Enforcement Officer*

"[A] person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."[12] McAnnally clearly obstructed the officer by refusing to

---

[11] See *Hill*, 360 Ga. App. at 149; see also *Allen v. State*, 191 Ga. App. 623, 624 (2) (382 SE2d 690) (1989) ("Defendant's intent to exercise control over the contraband can be inferred by the suspicious and inconsistent explanations defendant gave to the trooper before he conducted the search."); cf. *Kier v. State*, 292 Ga. App. 208, 210 (1) (663 SE2d 832) (2008) (holding that there was insufficient circumstantial evidence of possession and noting "there was no evidence that [defendant] was uncooperative, attempted to flee police, behaved erratically, or appeared to be under the influence of drugs").

[12] OCGA § 16-10-24 (a).

exit the truck,[13] but she contends that the officer was not in lawful discharge of his duties when he made such a demand and, accordingly, she was within her rights to disobey. We disagree.

"In the interests of public safety and as part of what [the United States Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody. The [S]tate may inventory the contents of a car that has been *lawfully* impounded."[14]

> It is well established that cases supporting the State's right to impound a vehicle incident to the arrest of a person in control of it are founded on a doctrine of necessity. Under that doctrine, while the police may not impound a car to search for contraband, they may impound a vehicle if they must take charge of it for some reason. And ultimately, the test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment. *More specifically, the test is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary.* Furthermore, subsequent to a

---

[13] See *Johnson v. State*, 234 Ga. App. 218, 219-220 (3) (507 SE2d 13) (1998) (holding that refusing to exit a vehicle at the command of an officer can support a conviction for obstruction).

[14] (Citations omitted; emphasis in original) *State v. Lowe*, 224 Ga. App. 228, 229 (480 SE2d 611) (1997).

reasonable impoundment, the contents of an impounded vehicle are routinely inventoried to protect the property of the owner, protect the officers against claims for lost or stolen property, and protect the police from potential danger.[15]

Here, neither Byrd, who was impaired, nor McAnnally, who did not have a valid driver's license, could legally drive the truck with the boat from the dark shoulder of the interstate entrance ramp. This made it reasonably necessary for the police to impound the vehicle to eliminate the danger it posed to the public in such a location.[16] Police were not required to ask Byrd's mother what she would like to do with the vehicle when Byrd was arrested as there was "no one present at the scene to take custody of the [truck] and safely remove it[.]"[17] Indeed, "[p]olice officers are not required to ask whether an arrestee desires to have someone come and get the [vehicle], nor are they required to accede to an arrestee's request that they do so."[18]

---

[15] (Citations and punctuation omitted; emphasis supplied.) *Grizzle v. State*, 310 Ga. App. 577, 579 (1) (713 SE2d 701) (2011).

[16] See *Scott v. State*, 316 Ga. App. 341, 344 (729 SE2d 481) (2012) ("Here, [the driver] was arrested, as was her companion, and no one remained to take custody of the car and remove it from the shoulder of the exit ramp.").

[17] Id. at 343.

[18] *Carlisle v. State*, 278 Ga. App. 528, 530 (629 SE2d 512) (2006).

Given that officers were authorized to direct McAnnally to exit the vehicle so that it could be inventoried and impounded, they were engaged in the lawful discharge of their official duties, and the evidence supported McAnnally's conviction for obstruction.

2. In two claims of error, McAnnally contends that she received ineffective assistance of trial counsel. We disagree.

Georgia law is clear that

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington.*[19] If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial

[19] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

10

scrutiny of counsel's performance must be highly deferential. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result. Indeed, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[20]

We will address McAnnally's allegations of ineffective assistance in turn.

*(a) Conceding Guilt of Obstruction*

Neither the opening nor closing statements were transcribed, but apparently McAnnally's trial counsel conceded that she committed the crime of obstruction. Although the exact nature of the concession is not clear from the record, during sentencing trial counsel stated "[w]e admitted to the jury that she's guilty of the misdemeanor of obstruction."

---

[20] (Citations and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 192-193 (4) (825 SE2d 578) (2019).

During the evidentiary hearing held on McAnnally's motion for new trial, her trial counsel testified that he had been an attorney for 21 years and had tried roughly 100 criminal jury trials. He advised McAnnally that he believed she was clearly obstructing the police officer and that he did not believe she would avoid conviction on that count. Accordingly, trial counsel's strategy, based upon his prior experience, was to attempt to gain credibility with the jury by admitting obstruction in the hope that the jury would find McAnnally not guilty of the more serious gun possession charge.

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. In other words, trial tactics and strategy are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[21] Moreover, this Court has previously recognized that an attorney's tactic of admitting to less serious and more easily proven charges to gain credibility in an attempt to avoid conviction on more serious charges, unless done without the

---

[21] (Citations and punctuation omitted.) *Pierre v. State*, 360 Ga. App. 95, 100 (2) (858 SE2d 532) (2021).

consent of the defendant, does not constitute ineffectiveness.[22] Accordingly, this claim of error fails.

*(b) Failing to File a Motion to Suppress*

McAnnally contends that her trial counsel should have filed a motion to suppress the discovery of the firearm in the truck because she had been illegally detained and because the warrantless search of the truck was unconstitutional. For the reasons discussed in Division 1 (b), the police were authorized to inventory and impound the vehicle under the circumstances, and McAnnally committed the crime of obstruction when she refused the lawful command to exit the vehicle. Accordingly, there was no constitutional violation that would have authorized suppression of

---

[22] See *Baxter v. State*, 329 Ga. App. 589, 594 (3) (b) (765 SE2d 738) (2014) ("At the motion for new trial hearing, trial counsel explained that he did not object to the admission of [certain] evidence because he wanted to establish credibility with the jury, given that [the defendant] was 'caught red-handed' committing the act of peeping tom. His strategy was to establish for the jury that [the defendant] may have been a peeping tom, but he was not a rapist."); *Fletcher v. State*, 326 Ga. App. 389, 391 (2) (756 SE2d 625) (2014) ("Counsel testified that by making certain concessions, he believed he would develop credibility with the jury and that he hoped to remove the 'armed' element of the robbery charge from the jury's consideration. [Defendant] has not shown that this amounted to a deficient performance."); *Mallon v. State*, 266 Ga. App. 394, 396 (2) (597 SE2d 497) (2004).

evidence of the firearm, and McAnnally's trial counsel was not ineffective for failing to file a meritless motion.[23]

*Case No. A23A1242*

3. Byrd contends that his trial counsel was ineffective for failing to file a motion to suppress the firearm found in the truck. We disagree.

Byrd challenges the constitutionality of the search of his vehicle, but for the reasons discussed in Divisions 1 (b) and 2 (b), the search was legally conducted as the truck was being impounded; thus, the motion to suppress would have been meritless.

*Judgments affirmed. Barnes, P. J., and Land, J., concur.*

---

[23] See *Stanley v. State*, 283 Ga. 36, 39 (1) (a) (656 SE2d 806) (2008) (holding that to prevail on a claim of ineffectiveness based on a failure to file a motion to suppress, a defendant must make a "strong showing" that the evidence would have been suppressed).